FILED

14 SEP 18  PM 4: 03

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN NEWS AND INFORMATION SERVICES, INC.; et al., | CASE NO. 12-CV-2186 BEN (KSC) |
| Plaintiffs, | **ORDER:** |
| vs. | • **GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS** |
| WILLIAM D. GORE; et al., | • **GRANTING CITY'S MOTION TO DISMISS** |
| Defendants. | • **DENYING CITY'S MOTION TO STRIKE AS MOOT** |
| | [Docket Nos. 54, 55, 56] |

Presently before the Court is: (1) a Motion to Dismiss filed by the City of San Diego and William Lansdowne (Docket No. 54); (2) a Motion to Strike filed by the City of San Diego and William Lansdowne (Docket No. 55); and (3) a Motion to Dismiss filed by the County of San Diego, William D. Gore, Jan Caldwell, Thomas Seiver, Brendan Cook, Jesse Allensworth, James Breneman, Michael Proctor, the San Diego County Sheriff's Department, and Bonnie Dumanis (Docket No. 56). For the reasons stated below, the County Defendants' motion to dismiss is **GRANTED in part and DENIED in part**, the City's motion to dismiss is **GRANTED**, and the City's motion to strike is **DENIED** as moot.

12-CV-2186

# BACKGROUND

## I.   Facts[1]

Plaintiff James C. Playford is a local freelance photojournalist and has been an agent of Plaintiff American News and Information Services, Inc. ("American News") since February 2010.  American News is a Connecticut news and information corporation wholly owned by Plaintiff Edward A. Peruta.  Plaintiffs assert seven claims against San Diego law enforcement personnel[2] arising from the non-renewal of Playford's San Diego Police Department ("SDPD") issued media credentials, Playford's February 28, 2010,[3] March 9, 2010, December 1, 2011, and May 25, 2012 arrests, and the search and seizure of Playford's camera during three of his arrests.

### A.   Media Credentials

Playford received media credentials from the SDPD in 2007.  On July 25, 2008, Playford filmed San Diego County Sheriff's Deputies beating Allen Baker outside a bar in Ramona, California, which resulted in Playford and Baker filing a civil rights action against San Diego County.  On August 24, 2009, the City warned Playford by letter that his media credentials were in danger of being revoked because of information it had received from the San Diego County Sheriff's Department about "complaints and court actions against deputies in which there had been apparent questionable recollections and accounting of the facts."  The letter also stated that possessing a media credential was "a privilege and not a right."

---

[1]The following facts are drawn from the allegations of the Second Amended Complaint ("SAC").

[2]"Defendants" is used to collectively refer to: (1) "City Defendants"— City of San Diego; San Diego Police Chief William Lansdowne; and (2) "County Defendants"— San Diego County; San Diego County Sheriff William Gore; San Diego County Sheriff's Dept. Public Affairs Director Jan Caldwell; San Diego County Sheriff's Deputies Thomas Seiver, Brendan Cook, Jesse Allensworth, James Breneman, and Michael Proctor; and San Diego County District Attorney Bonnie Dumanis.

[3]Although Playford was not arrested on February 28, 2010, but later, after Playford filed a complaint against Deputy Seiver, the parties refer to it as the February 28, 2010 arrest.

1       In October 2009, Playford recorded and posted online video recordings of a
2   makeshift brothel in McGonigle Canyon, the existence of which the SDPD had
3   denied. Playford was notified by letter dated January 11, 2010 that his media
4   credentials were not being renewed "because it was clear to the SDPD that
5   Playford's pattern of behavior had not changed."
6       Sometime after January 1, 2009 and before May 25, 2012, the San Diego
7   County Sheriff's Department ("SDCSD") Public Affairs Director Jan Caldwell
8   distributed or directed the distribution of a captioned photograph of Playford,
9   stating: "Per Jan Caldwell J.C. Playford is not a member of the media" to SDCSD
10  deputies and other law enforcement agencies in San Diego County.
11      **B.   Playford Arrests**
12      Playford alleges he was arrested four times in retaliation for his exercise of
13  his First Amendment right to videotape and report on matters of public interest,
14  including law enforcement activities occurring in public.
15          **1.   February 28, 2010**
16      On February 28, 2010, Playford was videotaping Deputy Seiver interviewing
17  two individuals at a dispatch scene in Ramona in which law enforcement personnel
18  were responding to an alleged assault with a deadly weapon. The scene was not
19  closed to the public in any way. Another deputy observed that Playford was no
20  closer than ten to fifteen feet from Deputy Seiver. Playford was not arrested at the
21  scene although Playford filed a complaint with Internal Affairs against Deputy
22  Seiver indicating he ran toward and pushed Playford in the street. After filing the
23  Internal Affairs complaint, Playford was charged with obstructing or delaying an
24  officer in violation of California Penal Code § 148(a)(1). In a trial consolidated
25  with another § 148(a)(1) charge for the March 9, 2010 arrest, discussed below, the
26  jury deadlocked. Playford then plead guilty to disturbing the peace.
27  ///
28  ///

1     **2.     March 9, 2010**

2          On March 9, 2010, Playford arrived at a location where a mentally ill woman

3 was reportedly making homicidal and suicidal threats.  Playford was in an area open

4 to the general public, *i.e.* a grocery store parking lot where members of the general

5 public were parking and walking freely, approximately fifty feet away from the

6 response scene.  He was videotaping Deputy Seiver interviewing the woman.

7 Playford was again arrested for obstructing or delaying a police officer in violation

8 of § 148(a)(1).  Law enforcement seized Playford's video camera during this

9 incident.  As noted above, this charge was consolidated for trial with the February

10 28, 2010 charge.  The jury deadlocked, but Playford plead guilty to disturbing the

11 peace.

12     **3.     December 1, 2011**

13          On December 1, 2011, Playford responded to reports of a bomb threat at the

14 Vista office of a Congressman.  Playford stayed outside motor vehicle detour points

15 and police tape boundaries.  Playford observed other members of the public walking

16 in the area.  While using his cell phone, Playford was confronted, detained, and

17 arrested by Deputy Cook for violation of § 148(a)(1).  Law enforcement seized

18 Playford's video camera and copied its contents.  On May 18, 2012, Playford was

19 convicted of violating § 148(a)(1).

20     **4.     May 25, 2012**

21          On May 25, 2012, Playford approached a multiple fatality, highway motor

22 vehicle accident scene.  Playford was on a public street that was closed to traffic,

23 but accesible to some members of the media.  Deputies Breneman and Proctor

24 advised Playford the America News credentials he presented did not allow him to be

25 within the accident scene.  Playford objected to his exclusion from the accident

26 scene and refused to leave.  He was then was arrested for violation of § 148(a)(1).

27 Law enforcement seized Playford's video camera and American News credentials

28 during this incident.  Playford was found not guilty of violating § 148(a)(1).

C.   **Other Instances of Exclusion**

On March 2, 2010, Playford and Peruta were denied access to an area overlooking Rancho Bernardo Community Park where San Diego law enforcement were recovering the remains of a missing child and murder victim.

On March 6, 2010, unidentified American News personnel were denied access to an area north of Pala Temecula Road where San Diego law enforcement were recovering the remains of another missing child and murder victim.

On March 15, 2012 Playford and Peruta responded to reports of a stolen motor vehicle shooting at a casino, but were excluded by the casino based on guidance from SDCSD because they lacked appropriate media credentials.

**II.   Procedural History**

On March 25, 2013, the Court granted Defendants' motions to dismiss, but granted Plaintiffs leave to amend. Plaintiffs filed a First Amended Complaint on April 15, 2013. The City and County Defendants filed separate motions to dismiss Plaintiffs' amended claims pursuant to Federal Rule of Civil Procedure 12(b)(6) on various grounds raised in the present motions, including untimeliness, immunity, and failure to allege sufficient facts to support any civil rights violation. (Docket Nos. 35, 37.) The City Defendants also filed a motion to strike Plaintiffs' request for punitive damages pursuant to Federal Rule of Civil Procedure 12(f). (Docket No. 36.)

While these motions were pending, Plaintiffs filed a motion seeking leave to file a Second Amended Complaint ("SAC"). The Court granted the motion and Plaintiffs filed the SAC. (Docket No. 53.) Defendants again filed motions to dismiss and strike. These motions are fully briefed and before the Court. (Docket Nos. 54, 55, 56.)

///

///

///

**DISCUSSION**

I.    **Legal Standards**

    A.    **Motions to Dismiss**

      "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) test the sufficiency of this required showing. *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

    B.    **Leave to Amend**

      "Although a district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations, dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Id.* A "district court's discretion over amendments is especially broad where the court has already given a plaintiff one or more opportunities to amend his complaint." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir. 1987).

I.    **Claims**

    A.    **Section 1983 Claims**

      "To state a claim for relief under section 1983, [] Plaintiffs must plead two essential elements: 1) that the Defendants acted under color of state law; and 2) that the Defendants caused them to be deprived of a right secured by the Constitution and laws of the United States." *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997). Defendants do not dispute that they acted under the color of state law, but they contend that none of the conduct alleged establishes a deprivation of Plaintiffs'

- 6 -

1  civil rights.

2         **1.**     **Claim One: First Amendment Retaliation**

3        The County Defendants move to dismiss claim one based on: (a) failure to

4  allege any First Amendment violation; (b) that the claims premised on the February

5  28, 2010 and March 9, 2010 incidents are barred by the statute of limitations; (c)

6  that the claims premised on the February 28, 2010, March 9, 2010, and December 1,

7  2011 arrests are improper attempts to invalidate criminal judgments, and (d)

8  qualified immunity.

9         **a.**     **The SAC Alleges a First Amendment Violation**

10        County Defendants assert that Playford was not arrested in retaliation for

11  exercising his First Amendment rights, but rather because he appeared at crime

12  scenes and obstructed and interfered with law enforcement in the midst of

13  investigations.  This version of events might ultimately prove true, but as explained

14  in more detail below, it contradicts the allegations of the SAC that the Court must

15  accepts as true at the pleading stage.

16        "In this Circuit, an individual has a right 'to be free from police action

17  motivated by retaliatory animus." *Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th

18  Cir. 2013) (quoting *Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1231-32 (9th Cir.

19  2006)).  In general, the public enjoys a "First Amendment right to film matters of

20  public interest." *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995); *see*

21  *also Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) ("the First Amendment's aegis

22  . . . encompasses a range of conduct related to the gathering and dissemination of

23  information . . . The filming of government officials engaged in their duties in a

24  public place, including police officers performing their responsibilities, fits

25  comfortably within these principles.").

26        "To demonstrate retaliation in violation of the First Amendment, [a plaintiff]

27  must [show] that [Defendants] took action that would chill or silence a person of

28  ordinary firmness from future First Amendment activities." *Skoog*, 469 F.3d at

1    1231-32.  The Ninth Circuit has explicitly "recognized that a retaliatory police

2    action such as an arrest or search and seizure would chill a person of ordinary

3    firmness from engaging in future First Amendment activity."  *Ford*, 706 F.3d at

4    1193.

5          The Court is mindful that only one side of this story is before the Court, as is

6    often the case in considering a motion to dismiss, but, based on the allegations of

7    the SAC, Playford has alleged the County Defendants took action that would chill

8    or silence a person of ordinary firmness from future First Amendment activities.

9          Playford[4] alleges that he was repeatedly arrested while attempting to

10   videotape scenes of public interest that were open to the general public.  (SAC ¶¶

11   93-97 (" . . . in an Albertson's food store parking lot with members of the general

12   public parking, walking freely, entering and exiting the store with groceries, in and

13   around the immediate area . . ."), ¶ 109 ("Playford observed in his vicinity non-

14   public safety civilians freely walking and using their cellphones . . .").  Playford

15   alleges he was arrested and his cameras seized repeatedly for attempting to film

16   matters of public interest.  Additionally, Playford also alleges in detail an

17   increasingly adversarial relationship with the County in which he appears to have

18   been targeted by SDCSD deputies because of his prior unfavorable testimony

19   concerning deputies' conduct toward him and others.  Thus, accepting these

20   allegations as true, it appears that Playford has sufficiently alleged retaliation in

21   violation of the First Amendment.  *Skoog*, 469 F.3d at 1231-32.

22         Playford's May 25, 2012 arrest, on the other hand, cannot form the basis for

23   his retaliation claim.  Playford alleges he was in an accident scene closed to the

24   public, he objected to being told he could not be there, refused to leave, and was

25   arrested.  As this Court previously ruled, individuals, including members of the

26   media, can be excluded from accident or crime scenes without violating the First

27

28   [4]The Court's analysis focuses on the allegations as to Playford because, as the
     Court later explains, there is no basis for any of the claims to be asserted by Peruta or
     American News.

1   Amendment. *Houchins v. KQED*, 438 U.S. 1, 10-11 (1978) (finding "[t]he press has

2   no First Amendment right to access accident or crime scenes if the general public is

3   excluded."); *accord Branzburg v. Hayes*, 408 U.S. 665, 684-85 (1972) ("Newsmen

4   have no constitutional right of access to the scenes of crime or disaster when the

5   general public is excluded."); *Chavez v. City of Oakland*, 2009 WL 1537875, at *3

6   ("The press has no First Amendment right to access accident or crime scenes if the

7   general public is excluded"); *Watson v. Cronin*, 384 F. Supp. 652, 657 (D. Colo.

8   1974) ("A reporter does not have an absolute unqualified right of access to news.");

9   *L.A. Free Press, Inc. v. City of L.A.*, 9 Cal. App. 3d 448, 455 (2d Dist. 1970)

10   (finding petitioner's "status as the publisher of a weekly paper did not give the

11   petitioner a special right of access to crime or disaster scenes under the First

12   Amendment"). Based on the allegations of the SAC, the May 25, 2012 arrest

13   occurred within an accident scene closed to the general public that Playford had no

14   First Amendment right to be within. The allegations of his SAC indicate he

15   objected to being excluded from the accident scene, refused to leave the accident

16   scene and was arrested for it. Playford's First Amendment retaliation claim cannot

17   succeed based on the May 25, 2012 arrest.

18                    **b.   Statute of Limitations as to the February 28, 2010 and**

19                          **March 9, 2010 Incidents**

20         Notwithstanding the sufficiency of Plaintiffs' allegations, the County

21   Defendants argue that Plaintiffs' claims premised on the February 28, 2010 and

22   March 9, 2010 incidents are barred by the statute of limitations. Plaintiff responds

23   that these claims are timely because the statute of limitations was tolled under

24   California Government Code § 945.3 while related charges were pending in

25   Superior Court.

26         "Claims under § 1983 are subject to the state statute of limitations for

27   personal injury claims. In California, that state rule is two years." *Comm.*

28   *Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 701 n.3 (9th Cir.

1    2009) (identifying California's state rule as two years and acknowledging it was one

2    year prior to 2003).   A "claim accrues when the plaintiff knows or should know of

3    the injury that is the basis of the cause of action." *Douglas v. Noelle*, 567 F.3d

4    1103, 1109 (9th Cir. 2009).   "Federal Rule of Civil Procedure 3 [] determine[s]

5    when a § 1983 action commences for purposes of the statute of limitations," and

6    "Rule 3 provides that '[a] civil action is commenced by filing a complaint with the

7    court.'" *Id.*   The initial complaint was filed on September 6, 2012, more than two

8    years after the alleged February 28, 2010 and March 9, 2010 incidents took place;

9    therefore, absent tolling, Playford's claims premised on those incidents would be

10   barred by the statute of limitations. *Id.*

11        "State law also governs [the] application of tolling doctrines," and "[i]n

12   California, the statute of limitations for section 1983 actions is tolled by Cal. Gov't

13   Code § 945.3 while criminal charges are pending." *Torres v. City of Santa Ana*, 108

14   F.3d 224, 226 (9th Cir. 1997).   California Government Code § 945.3 states as

15   follows:

16
17        No person charged . . . [with] a criminal offense may bring a civil
         action for money or damages against a peace officer or public entity
         employing a peace officer based upon conduct of the peace officer
18        *relating to* the offense for which the accused is charged, including an
         act or omission in investigation or reporting the offense or arresting
19        or detaining the accused, while the charges against the accused are
         pending before a superior court.
20        Any applicable statute of limitations for filing these actions shall be
         tolled during the period that the charges are pending before a superior
21        court.

22   Cal. Gov't Code § 945.3 (emphasis added).  If § 945.3 applies, Playford's claim is

23   timely.  Criminal charges were filed against Playford arising from the February 28,

24   2010 and March 9, 2010 incidents and resolved through a plea bargain after trial on

25   March 29, 2011, less than two years before this action was commenced on

26   September 6, 2012.

27        The County Defendants argue that § 945.3 is inapplicable because Playford's

28   claims do not relate to the "offense for which [he] was charged."  As a result of the

1   February 28, 2010 and March 9, 2010 incidents, Playford was charged with
2   obstructing or delaying a police officer, and after a consolidated jury trial which
3   resulted in a deadlocked jury, Playford accepted a plea bargain and pled guilty to
4   disturbing the peace.  Playford asserts that he was arrested in retaliation for his First
5   Amendment activities.

6          Playford's claims need only "relat[e] to" the offense for which he was
7   charged.  Accepting the truth of the allegations of the SAC and drawing all
8   reasonable inferences in favor of Playford, the statute of limitations may be tolled
9   by § 945.3.  *See Harding v. Galcern*, 889 F.2d 906, 907-909 (finding § 945.3 tolled
10  the statute of limitations for § 1983 claims based on deputies interfering with the
11  plaintiff's First Amendment rights for the period when charges for disturbing the
12  peace and obstructing a peace officer were pending).

13                        **c.    *Heck v. Humphrey***

14         County Defendants additionally argue Playford's First Amendment retaliation
15  claim cannot proceed based on his February 28, 2010, March 9, 2010, and
16  December 1, 2011 arrests under *Heck v. Humphrey*. 512 U.S. 477 (1994).  County
17  Defendants assert that Playford's guilty plea to resolve the prosecutions associated
18  with the February 28, 2010 and March 9, 2010 incidents and his conviction for the
19  December 1, 2011 incident bar Playford's First Amendment retaliation claim.

20         Under *Heck*, a plaintiff cannot "recover damages for [an] allegedly
21  unconstitutional conviction or imprisonment, or for other harm caused by actions
22  whose unlawfulness would render a conviction or sentence invalid" unless the
23  conviction has been reversed, expunged, or declared invalid.  512 U.S. at 486-87.
24  In short, the Court "must consider whether a judgment in favor of the plaintiff
25  would necessarily imply the invalidity of his conviction."  *Hooper v. Cnty. of San*
26  *Diego*, 629 F.3d 1127, 1130 (quoting *Heck*, 512 U.S. at 487).  "If the answer is yes,
27  the suit is barred."  *Id.*  As explained below, the Court does not have sufficient
28  information to answer yes or no.

12-CV-2186

1    In moving to dismiss based on *Heck*, County Defendants do not discuss the

2    provision to which Playford plead guilty[5] for the February 28, 2010 and March 9,

3    2010 incidents or explain in any detail the factual basis for his conviction for the

4    December 1, 2011 incident.

5    Playford's convictions could be based on facts distinct from those giving rise

6    to his First Amendment retaliation claim.  In *Hooper v. San Diego*, the Ninth Circuit

7    explained that multiple "'factual contexts' can exist during 'one continuous chain of

8    events' — or in the words of *Yount*, during a 'continuous transaction.'" 629 F.3d

9    1127, 1131-32 (9th Cir. 2011) (discussing and applying the California Supreme

10   Court's interpretation of § 148(a)(1) in *Yount v. City of Sacramento*, 43 Cal. 4th

11   885, 889 (2008)).  Even if the course of interaction between Playford and SDCSD

12   deputies was "one continuous chain of events" each time they encountered each

13   other, there may be facts giving rise to Playford's claim that were not the basis for

14   his plea or conviction.  If this is the case, *Heck* does not bar his claim.

15   *Yount v. City of Sacramento* illustrates the significance of a factual basis for

16   convictions in its *Heck* analysis.  43 Cal. 4th at 895.  The court noted "the trial judge

17   did not rely solely on the bare record of the criminal proceedings in analyzing the

18   scope of [plaintiff's] criminal conviction, but considered also, the testimony of

19   seven eye witnesses." *Id.*  The court went on to distinguish cases in which courts

20   lacked the factual basis for pleas necessary for the *Heck* analysis. *Id.*   In applying

21   *Heck*, the *Yount* court outlines in detail the course of events between the plaintiff

22   and law enforcement and identifies which events were barred by *Heck* and which

23   were not.  Here, the Court lacks sufficient information at this stage of the

24   proceedings  to determine whether Playford's First Amendment retaliation claim is

25   barred by *Heck v. Humphrey*.

26   ///

27

28   [5]The SAC indicates Playford plead guilty to disturbing the peace, although his
     Opposition brief indicates he plead guilty to disorderly conduct.

12-CV-2186

### d.   Qualified Immunity

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). There are two prongs to the qualified immunity analysis: (1) "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" and (2) "whether the right was clearly established"? *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

The Court has already found that Playford has sufficiently alleged a violation of a constitutional right. The Court now considers whether Playford's right to be free from retaliatory arrests for his First Amendment activities was clearly established at the time. "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle*, 132 S. Ct. 2093 (internal quotation marks omitted). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Id.*

The parties focus on whether it was clearly established that a retaliatory arrest could occur in the presence of probable cause for the arrest because Playford only asserts the absence of probable cause for the May 25, 2012 arrest. Plaintiffs' rely on *Skoog*, 469 F.3d 1221, and *Ford*, 706 F.3d 1188, previously discussed. County Defendants rely on *Reichle*, 132 S.Ct. 2088, and *Acosta v. City of Costa Mesa*, 718 F.3d 800 (9th Cir. 2013). County Defendants argue that it is not clearly established that an individual has a right to be free from retaliatory arrest even if probable cause exists for that action.

In *Skoog*, decided in 2006, the Ninth Circuit acknowledged that whether the absence of probable cause was necessary to plead a First Amendment retaliation claim was an open question in the Circuit and found "that a plaintiff need not plead

1   the absence of probable cause in order to state a claim for retaliation."[6]  469 F.3d at

2   1232.[7]  In *Reichle*, the Supreme Court found that the *Supreme Court* had never

3   recognized the "right to be free from a retaliatory arrest that is otherwise supported

4   by probable cause" and declined to reach the issue.  132 S. Ct. at 2094-95 (emphasis

5   added).  The court went on to analyze whether the *Tenth Circuit's* precedent clearly

6   established the right, on the assumption that "Court of Appeals authority could be a

7   dispositive source of clearly established law." *Id.* at 2094 (emphasis added).  The

8   court found that the right to be free from a retaliatory arrest that is supported by

9   probable cause, previously clearly established in the Tenth Circuit, became

10  uncertain following the Supreme Court's 2006 decision in *Hartman v. Moore*, 547

11  U.S. 250 (2006). *Id.* 2096-97.  In *Hartman*, the Supreme Court found the absence

12  of probable cause was a requirement for a retaliatory *prosecution* claim. *Hartman*,

13  547 U.S. at 265-66 (emphasis added).   In finding sufficient uncertainty in the

14  Tenth Circuit precedent to find defendants were entitled to qualified immunity, the

15  court noted that "[a] reasonable official could have interpreted *Hartman*'s rationale

16  to apply to retaliatory arrests." *Reichle*, 132 S. Ct. at 2095.

17       A similar uncertainty did not happen in the Ninth Circuit, at least not for more

18  than seven months, all of which preceded the conduct alleged here.  *Hartman* was

19  decided on April 26, 2006 and the Ninth Circuit not only discussed it, but also relied

20  on it in *Skoog*, decided on November 20, 2006, in concluding that a plaintiff need

21  not plead the absence of probable cause to state a claim for retaliation.  The only

22  question then is whether the law established in *Skoog*, that plaintiffs need not plead

23  the absence of probable cause for a retaliation claim, has remained clear.

---

24

25       [6]After recognizing the "right of an individual to be free of police action
    motivated by retaliatory animus but for which there was probable cause" the court

26  found the defendants were entitled to qualified immunity because the court only
    recognized the right for the first time in its decision.  469 F.3d at 1235.

27       [7]In *Skoog*, the court was considering whether a plaintiff had to plead the absence
    of probable cause for a search and seizure, rather than an arrest, as part of plaintiff's

28  retaliation claim, however, the parties do not suggest this distinction alters the Court's
    analysis of this issue.

1    *Reichle*'s statement that the Supreme Court has not previously recognized this
2    right should not have created uncertainty because the Supreme Court also declined
3    to reach the issue. *Reichle*, 132 S. Ct. at 2093 (electing to analyze the second prong
4    and avoid the "more difficult question whether the purported right exists at all).
5    Additionally, it is possible for a circuit court of appeals, like the Ninth Circuit, to
6    recognize rights the Supreme Court has yet to address. This is increasingly likely
7    when the Supreme Court has the option, exercised in *Reichle*, not to address the first
8    prong of the qualified immunity analysis, *i.e.* whether a individual has the right to
9    be free from a retaliatory arrest supported by probable cause. *Id.* The Supreme
10   Court would not have spent the bulk of the *Reichle* decision analyzing the Tenth
11   Circuit's precedent for purposes of the qualified immunity analysis if only rights
12   recognized by the Supreme Court are clearly established.

13        The *Reichle* court does provide significant analysis of the similarities between
14   retaliatory prosecution claims that, under *Hartman*, require the plaintiff to plead the
15   absence of probable cause and retaliatory arrest claims. *Id.* at 2095-96. This
16   analysis could be interpreted as undermining *Skoog*'s analysis, however the court
17   notes "we do not suggest that *Hartman*'s rule in fact extends to arrests. Nor do we
18   suggest that every aspect of *Hartman*'s rationale could apply to retaliatory arrest."
19   *Id.* at 2096.

20        Any uncertainty would appear to be resolved by *Ford*'s statement, after
21   *Reichle* that "this Court's 2006 decision in *Skoog* established that an individual has
22   a right to be free from retaliatory police action, even if probable cause existed for
23   that action." *Ford*, 706 F.3d at 1195-96. The *Ford* court went on to deny qualified
24   immunity to officers for booking and jailing the plaintiff despite having probable
25   cause to do so. *Id.* at 1196.

26        However, *Acosta* has created some uncertainty. In granting qualified
27   immunity the *Acosta* court relies on *Reichle* and states that "the Supreme Court held
28   that it had not recognized, *nor was there a clearly established First Amendment*

1  *right to be free from a retaliatory arrest that is otherwise supported by probable*
2  *cause.*" *Acosta*, 718 F.3d at 825.  As discussed above, *Reichle* declined to address
3  whether such a right existed, but rather found only that it was not clearly established
4  in its own or the Tenth Circuit's precedent.  This alone, does not alter the Ninth
5  Circuit's rule recognized in *Skoog* and reaffirmed in *Ford,* post-*Reichle*.  However,
6  in light of *Acosta*'s statement about *Reichle*, the Court cannot find "existing
7  precedent [has] placed the statutory or constitutional question beyond debate."
8  *Reichle*, 132 S. Ct. at 2093.  Accordingly, claim one is **DISMISSED without leave**
9  **to amend** based on qualified immunity as to deputies Seiver, Cook, Allensworth,
10 Breneman, and Proctor.[8]

11              **2.      Claim Two: Fourth Amendment Unlawful Search and**
12                       **Seizure**

13         County Defendants move to dismiss Plaintiffs' second claim for illegal search
14 and seizure in violation of the Fourth Amendment.  As to each seizure, County
15 Defendants argue the search and seizure of Playford's cameras were incident to a
16 lawful arrest.  Additionally, County Defendants argue the County Defendants are
17 entitled to qualified immunity.

18         As explained above, the qualified immunity analysis has two prongs.  *See id.*
19 at 2093.  Courts may analyze the second prong "without resolving the often more
20 difficult question whether the purported right exists at all," *i.e.* the first prong.  *Id.*
21 The Court takes that approach here and finds it was not clearly established that the
22 searches and seizures of Playford's high definition video cameras incident to his
23 arrests violated the Fourth Amendment.

24         Plaintiffs SAC alleges that law enforcement seized and searched Playford's
25 cameras without a warrant during and subsequent to his March 9, 2010, December
26 1, 2011, and May 25, 2012 arrests in violation of the Fourth Amendment.  Based on

27 _____

28         [8]County Defendants move to dismiss as to deputies Allensworth and Breneman arguing neither directly arrested Playford, however, to the extent Plaintiffs have alleged their involvement in Playford's arrest, they are entitled to qualified immunity.

1    the allegations of the SAC, Playford's cameras were seized incident to each of the

2    three arrests.

3        "The Fourth Amendment protects the right to be free from 'unreasonable

4    searches and seizures,'" *Davis v. United States*, 131 S. Ct. 2419, 2423 (2011), and

5    "a warrantless search . . . is reasonable only if it falls within a recognized

6    exception." *Missouri v. McNeely*, 133 S. Ct. 1552, 1558 (2013).

7        The Supreme Court has long recognized the reasonableness of a search

8    incident to arrest without a warrant. *Riley*, 134 S. Ct. 2473, 2482-84 (2014).

9    However, high definition video cameras do not have such a lengthy history and

10   whether they are subject to search and seizure incident to a lawful arrest is unsettled.

11   The Supreme Court's recent decision in *Riley v. California* provides some guidance,

12   but leaves the law with regard to cameras unsettled. 134 S. Ct. 2473.

13       The *Riley* court found the search incident to arrest exception does not apply to

14   cell phones. *Id.* at 2485. But, this does not settle the question as to cameras. There

15   are qualities associated with cell phones, significant in the court's analysis, that are

16   both similar to and different from cameras. The contents of a video camera lack the

17   potential to "be used as a weapon," do have significant storage capacity, and also do

18   have the potential to reconstruct "an individual's private life . . . through a thousand

19   photographs labeled with dates [and] locations" like a cell phone. *Id.* at 2485, 2489-

20   90. However, video cameras generally do not contain a log of phone calls made

21   and received, text messages sent and received, applications reflecting political

22   affiliations, prayer requests, pregnancy symptoms, hobbies, and budgets, or the

23   "digital record of nearly every aspect of" an individual's life. *Id.* at 2489-91, 2493.

24   The cameras at issue here appear to fall somewhere between the physical search of a

25   cigarette package found in a pocket during a search incident to arrest allowed under

26   *United States v. Robinson*, 94 S. Ct. 467 (1973), and the data search of a cell phone

27   under *Riley* that generally requires a warrant. *Riley*, 134 S. Ct. at 2485 ("A search

28   of the information on a cell phone bears little resemblance to the type of brief

1    physical search considered in *Robinson*").

2         As with Plaintiffs' first claim, the Court cannot say that "existing precedent

3    [has] placed the statutory or constitutional question beyond debate." *Reichle*, 132 S.

4    Ct. at 2093. Accordingly, Plaintiffs' second claim is **DISMISSED without leave to**

5    **amend** as to deputies Seiver, Cook, Allensworth, Breneman, and Proctor based on

6    qualified immunity.[9]

7              **3.    Claim Three: Failure to Train**

8         Plaintiffs allege the County failed to train deputies not to retaliate against

9    individuals for engaging in First Amendment activities and trained deputies to

10   exclude those lacking SDPD media credentials from crime or accident scenes.

11   "A government entity may not be held liable under 42 U.S.C. § 1983, unless a

12   policy, practice, or custom of the entity can be shown to be a moving force behind a

13   violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900

14   (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436

15   U.S. 658, 694 (1978)) ("*Monell* claims"); *see also A.E. ex rel Hernandez v. Cnty. of*

16   *Tulare*, 666 F.3d 631, 637-38 (9th Cir. 2012).

17        "Failure to act, including failure to train, [alleged here], may give rise to a

18   *Monell* claim when 'through its omissions the municipality is responsible for a

19   constitutional violation committed by one of its employees.'" *Waggy v. Spokane*

20   *Cnty.*, 594 F.3d 707, 713 (9th Cir. 2010). However, "[a] municipality's culpability

21   for a deprivation of rights is at its most tenuous where a claim turns on a failure to

22   train." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). "[A] municipality's

23   failure to train its employees in a relevant respect must amount to 'deliberate

24   indifference to the rights of the persons with whom the untrained employees come

25   into contact." *Id.* at 1360. Anything less "would result in *de facto respondeat*

26   *superior* liability on municipalities." *Id.* Deliberate indifference may be shown by

27   _____

28        [9]County Defendants move to dismiss as to deputies Allensworth and Breneman
     arguing neither directly seized Playford's cameras, however, to the extent Plaintiffs
     have alleged their involvement, they are entitled to qualified immunity.

1 "actual or constructive notice that a particular omission in their training program

2 cause[d] city employees to violate citizens' constitutional rights" and that training is

3 maintained. *Id.* This can be established by allegations of "a pattern of similar

4 constitutional violations by untrained employees." *Id.*

5       Plaintiffs allege that Playford was arrested three times at scenes of public

6 interest open to the general public in retaliation for his First Amendment activities.

7 As discussed above, Playford has sufficiently alleged First Amendment retaliation

8 based on his first three arrests. Additionally, Playford alleges numerous deputies

9 knew who he was in advance of contact with him. He alleges negative comments

10 were made about him by Jan Caldwell, SDCSD Public Affairs Director. He alleges

11 he was targeted, in part, because a captioned photograph of him was circulated to

12 San Diego law enforcement that singled him out for attention. He alleges he filed

13 an Internal Affairs complaint about Deputy Cook's conduct on February 28, 2010

14 that was followed by his own arrest.  These allegations collectively suggest

15 Playford may have been targeted in retaliation for his First Amendment activities as

16 a result of the County's failure to train.   Accordingly, accepting the truth of the

17 allegations of the SAC and drawing all reasonable inferences in Playford's favor, as

18 the Court must, Playford has stated a *Monell* failure-to-train claim.

19       Playford also alleges the County's exclusion of him from an accident scene,

20 based on his lack of SDPD media credentials on May 25, 2012 and the search and

21 seizure of Playford's cameras reflect the County's failure to train law enforcement

22 personnel to interact with members of the press without violating the Fourth and

23 Fourteenth Amendments. As the Court has previously explained, excluding

24 Playford from an accident scene is not a violation of his First Amendment rights.

25 Additionally, as previously discussed, it is unclear whether the search of Playford's

26 cameras even constituted a Fourth Amendment violation. However, assuming the

27 searches were Fourth Amendment violations, the three searches incident to arrest,

28 alone, are not sufficient to show "deliberate indifference." *Connick*, 131 S. Ct. at

1  1360.  Plaintiffs' have not alleged a *Monell* failure-to-train claim on this basis.

2         County Defendants additionally move to dismiss the third claim as to SDCSD

3  Public Affairs Director Jan Caldwell.  County Defendants indicate Sheriff Gore,

4  elected to head the Sheriff's Department, is the policymaker for the Sheriff's

5  Department, rather than Jan Caldwell, who does not make policy for the Sheriff's

6  Department.  Plaintiffs fail to address this argument or identify how any amendment

7  might support a claim against Caldwell, but dismissal of Caldwell is consistent with

8  Plaintiffs allegations that Sheriff Gore is responsible for practices of the SDCSD,

9  including hiring, training, and supervision of SDCSD personnel, including

10 Caldwell.

11        Plaintiffs' third claim is **DISMISSED without leave to amend** as to

12 Caldwell.

13        **4.      Claim Four: First Amendment Limitations by City**

14                **Defendants**

15        The fourth claim of Playford's SAC, asserted against the City Defendants,

16 alleges the City and Police Chief Lansdowne limited Playford's First Amendment

17 activity by revoking Playford's media credentials.  The City moves to dismiss this

18 claim as barred by the statute of limitations.

19        As previously noted, the statute of limitations for bringing a § 1983 action is

20 two years.  Playford's media credentials were not renewed on January 11, 2010.

21 This action was filed on September 6, 2012.  Plaintiffs have not identified any basis

22 for tolling the statute of limitations.  Additionally, Plaintiffs have not indicated and

23 the Court is not aware of any way this claim could be saved from the statute of

24 limitations through amendment.  Accordingly, Plaintiffs' fourth claim is

25 **DISMISSED without leave to amend.**

26 ///

27 ///

28 ///

1            **5.**     **Claim Five: Fourteenth Amendment Deprivation of Property**

2                 **Interest in Media Credentials Without Due Process**

3         Playford alleges that the nonrenewal of Playford's media credentials

4 constitutes a deprivation of property without due process of law in violation of the

5 Fourteenth Amendment. Defendants argue that the claim is barred by the two-year

6 statute of limitations and additionally argue Playford had no protected property

7 interest in his media credentials.

8         As noted above as to Plaintiffs' fourth claim, Playford's credentials were not

9 renewed on January 11, 2010. The initial complaint in this action was filed more

10 than two years later on September 6, 2012. The claim is barred by the two-year

11 statute of limitations. Plaintiffs have not addressed this issue, identified any basis

12 for tolling under the allegations of the SAC, or identified how this claim could be

13 saved from the statute of limitations through amendment. Playford's fifth claim is

14 **DISMISSED without leave to amend.**

15 **II.**     **Other Claims**

16         Playford asserts claims for violation of the Federal Privacy Protection Act

17 ("FPPA") and a state law claim for false arrest.

18         **A.**     **Claim Six: Federal Privacy Protection Act**

19         Playford alleges that the warrantless seizure of his cameras on March 9, 2010,

20 December 1, 2011, and May 25, 2012 constitute violations of the FPPA.

21         "The Privacy Protection Act, 42 U.S.C. section 2000aa *et seq.*, 'generally

22 prohibits government officials from searching for and seizing documentary

23 materials possessed by a person in connection with a purpose to disseminate

24 information to the public.'" *Morse v. Regents of Univ. of Cal., Berkeley*, 821 F.

25 Supp. 2d 1112, 1120 (N.D. Cal. 2011) (quoting *Citicasters v. McCaskill*, 89 F.3d

26 1350, 1353 (8th Cir. 1996)). However, "[t]here are certain exceptions to the Act's

27 prohibition of searches and seizures, including when 'there is probable cause to

28 believe that the person possessing such materials has committed or is committing

1  the criminal offense to which the materials relate.'"  *Id.*  (quoting 42 U.S.C.

2  § 2000aa(a)(1), (b)(1)).

3          The FPPA does not protect individuals, like Playford, suspected of criminal

4  activity when the materials seized, his cameras, relate to the offense.  In each

5  incidence of seizure of Playford's cameras, Playford alleges he was filming the

6  activities occurring around him and leading to his arrest.  Additionally, as

7  previously discussed, Playford does not plead the absence of probable cause as to

8  the March 9, 2010 or December 1, 2010 arrests and, as discussed below as to the

9  May 25, 2012 arrest, the facts alleged in the SAC establish probable cause for his

10  arrest.

11          Despite multiple opportunities to amend this claim, Playford has failed to

12  state a FPPA claim.  Accordingly, the claim is **DISMISSED without leave to**

13  **amend**.

14          **B.    Claim Seven: False Arrest**

15          County Defendants move to dismiss Playford's false arrest claim because the

16  arrest was based on probable cause.  "Under California law, 'false arrest is not a

17  different tort' but 'is merely one way of committing false imprisonment.'"  *Arpin v.*

18  *Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919-20 (9th Cir. 2001).  And,

19  under California law "no cause of action shall arise against any peace officer . . .,

20  acting within the scope of his or her authority, for false arrest or false imprisonment

21  arising out of any arrest when . . . the arrest was lawful."  Accordingly, if the

22  deputies had probable cause to arrest Playford, his false arrest claim fails.

23          Playford asserts the SDCSD deputies did not have probable cause to arrest

24  him, but the Court is not required to accept as true allegations that are conclusory,

25  legal conclusions, unwarranted deductions of fact or unreasonable inferences.  *See*

26  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Iqbal*, 556

27  U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by

28  mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555 (on motion

12-CV-2186

1  to dismiss court is "not bound to accept as true a legal conclusion couched as a
2  factual allegation").

3      Here, the facts alleged in the SAC reflect that deputies had probable cause to
4  arrest Playford on May 25, 2012. Playford alleges he was in an accident scene
5  closed to the public. Deputies informed him his credentials did not allow him to be
6  there and that he could not be there. Playford also alleges that he stated his
7  objection to being excluded and refused to move. He was then arrested. As
8  previously discussed, Playford had no First Amendment right to be within a closed
9  accident scene inaccessible to the general public.

10     His refusal to leave the closed accident scene when told to do so by deputies
11 provided probable cause to arrest him for obstructing or delaying and officer. The
12 elements of § 148(a)(1) are: "(1) the defendant willfully resisted, delayed, or
13 obstructed a peace officer, (2) when the officer was engaged in the performance of
14 his or her duties, and (3) the defendant knew or reasonably should have known that
15 the other person was a peace officer engaged in the performance of his or her
16 duties." *Yount*, 43 Cal. 4th at 894-95 (citing *In re Muhammed C.*, 95 Cal. App. 4th
17 1325, 1329 (6th Dist. 2002)). It is clear from the allegations of the SAC that
18 Playford knew the deputies were peace officers engaged in the performance of their
19 duties, meeting the second and third elements. Playford also met the first element
20 because he alleges he objected and refused to move as directed by the deputies. *In*
21 *re Muhammed C.* addressed a similar issue. 95 Cal. App. 4th 1325. The defendant
22 defied a police officer's order to stop talking to another individual who had been
23 arrested. *Id.* at 1330. The defendant acknowledged the officer's order, but did not
24 follow it. *Id.* Here, Playford affirmatively objected to being excluded and
25 affirmatively refused to move out of an area where he was not permitted. Playford
26 has alleged probable cause for his arrest, negating a claim for false arrest.

27     Playford's false arrest claim is **DISMISSED**. It seems unlikely Playford can
28 amend this claim to state a false arrest claim without contradicting the current

12-CV-2186

1   allegations.  However, unlike Playford's other claims where he has had numerous

2   opportunities to amend, this was the first time Playford attempted to state a claim

3   for false arrest.[10]  Accordingly, the Court **GRANTS** Playford leave to amend this

4   claim.

5   **III.   Specific Plaintiffs and Defendants**

6         County Defendants also seek dismissal of claims asserted by Plaintiffs Peruta

7   and American News and dismissal of claims asserted against District Attorney

8   Bonnie Dumanis.

9         **A.   Plaintiffs Peruta and American News**

10        The County moves to dismiss all claims asserted by Peruta (claims one, two,

11  three, five, and six) and American News (claims one, two, three, four, five, and six)

12  because the SAC fails to state claims on behalf of either.  More specifically, County

13  Defendants note that the only allegations specific to Peruta concern his exclusion,

14  with Playford, from an area where a murder victim's remains were being recovered

15  on March 2, 2010 and an area where there was a report of an incident involving a

16  stolen motor vehicle suspect shooting on March 15, 2012.

17        County Defendants accurately note, and Plaintiffs' do not dispute, that a §

18  1983 claim based on events occurring on March 2, 2010 would be barred by the

19  two-year statute of limitations and there is no basis for tolling the statute of

20  limitations.[11]  And, the SAC does not allege that SDCSD deputies took any action

21  against Peruta during the March 15, 2012 incident other than advising the casino

22  that Playford and Peruta did not have SDPD issued media credentials.  There are no

23  other allegations specific to Peruta or American News and Plaintiffs fail to explain

24

25        [10]Playford was unable to allege false arrest as to the May 25, 2012 arrest until he
26  was acquitted for the May 25, 2012 charge.

27        [11]To the extent Peruta and American News are attempting to assert any claims
    based on the February 28, 2010 and March 9, 2010 arrest of Playford, those claims
28  would also be barred by the statute of limitations because, unlike Playford, § 945.3
    would not toll the statute of limitations because no criminal proceedings were pursued
    as to Peruta or American News.

12-CV-2186

1  in opposing the motion to dismiss how County Defendants' conduct gives rise to

2  any claim by Peruta or American News.  Additionally, Plaintiffs have also failed to

3  address how additional allegations might save these claims as to Peruta or American

4  News.  Claims one, two, three, five, and six are **DISMISSED without leave to**

5  **amend** as to Peruta and claims one, two, three, four, five, and six are **DISMISSED**

6  **without leave to amend** as to American News.

7  **B.    District Attorney Bonnie Dumanis**

8  **1.    Prosecutorial Immunity/Individual Capacity**

9  County Defendants move to dismiss all claims against District Attorney

10  Bonnie Dumanis.  Plaintiffs allege Dumanis' prosecutions of Playford reflect

11  retaliatory animus.[12]  However, "prosecutors enjoy absolute immunity for their

12  decisions to prosecute." *Reichle*, 132 S. Ct. at 2095.  Furthermore, "the prosecutor's

13  intent plays no role in the immunity inquiry, so . . . absolute immunity extends

14  [even] to prosecutorial acts that involve malice, bad faith, or conspiracy." *Ismail v.*

15  *Cnty. of Orange*, 917 F. Supp. 2d 1060, 1068 (C.D. Cal. 2012) (citing *Ashelman v.*

16  *Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (en banc)).  Because Plaintiffs' claims

17  against Dumanis are premised on her decisions to prosecute, she is absolutely

18  immune in her individual capacity from Plaintiffs' claims.  *Id.*

19  **2.    Eleventh Amendment /Official Capacity**

20  Plaintiffs' retaliation claims against Dumanis in her official capacity fare no

21  better. "California [district attorneys] serve both state and county function: They act

22  as state officials, and so possess Eleventh Amendment immunity, when acting in

23  their prosecutorial capacity." *Del Campo v. Kennedy*, 517 F.3d 1070, 1073 (9th Cir.

24

---

25  [12]The only additional basis for Plaintiffs' claims against Dumanis is Playford's
26  exclusion from a press conference because he lacked credentials issued by SDPD.
   However, Plaintiffs have cited no authority requiring district attorneys to open press
27  conferences to anyone claiming association with any news organization or recognizing
   a constitutional violation for precluding an individuals' attendance at a press
28  conference. At a minimum, any such right is certainly not clearly established. *Reichle*,
   132 S. Ct. at 2093 (explaining that government officials are entitled to qualified
   immunity if "purported right was not clearly established by prior case law").

12-CV-2186

1  2008) (internal quotation omitted).  Again, Plaintiffs' claims against Dumanis are
2  premised on her decisions to prosecute.  Thus, she is immune under the Eleventh
3  Amendment in her official capacity from Plaintiffs' claims.  *Id.*
4      As Dumanis is immune in both her individual and official capacities,
5  Plaintiffs' claims against her are **DISMISSED with prejudice.**
6  **IV.    Motion to Strike**
7      The City Defendants move to strike Plaintiff's request for punitive damages
8  pursuant to Federal Rule of Civil Procedure 12(f) arguing Plaintiffs are not entitled
9  to punitive damages against the City as a matter of law and that Plaintiffs have
10 failed to state sufficient facts for punitive damages against Chief Lansdowne.
11     The two claims asserted against the City and Chief Lansdowne have been
12 dismissed as barred by the statute of limitations.  Accordingly, the City's motion to
13 strike Plaintiffs' request for punitive damages is **DENIED** as moot.[13]
14                          **CONCLUSION**
15     The City's motion to dismiss is **GRANTED**.  Claims four and five are
16 **DISMISSED without leave to amend** as to the City Defendants.  The City's
17 motion to strike is **DENIED** as moot.
18     County Defendants' motion to dismiss is **GRANTED in part** and **DENIED**
19 **in part** as follows:
20 •    All claims, as asserted by Plaintiffs Peruta (claims one, two, three, five, and
21      six) and American News (claims one, two, three, four, five, and six) are
22      **DISMISSED without leave to amend**.
23 •    All claims asserted against Defendant Dumanis are **DISMISSED with**
24      **prejudice** based on absolute immunity.

---

[13]The Court notes that "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010).  Nor does Rule 12(f) "authorize a district court to dismiss a claim for damages on the basis that it is precluded as a matter of law." *Id.* at 976.

1    •    Claim one is **DISMISSED without leave to amend** as to Defendants Seiver,

2         Cook, Allensworth, Breneman, and Procter based on qualified immunity.

3    •    Claim two is **DISMISSED without leave to amend** as to Defendants Seiver,

4         Cook, Allensworth, Breneman, and Proctor based on qualified immunity.

5    •    Claim three is **DISMISSED without leave to amend** as to Caldwell.

6    •    Claims four, five, and six are **DISMISSED without leave to amend**.

7    •    Claim seven is **DISMISSED with leave to amend**.

8         Playford may file an amended complaint amending his seventh claim by

9  **October 6, 2014.**  If he elects not to amend this claim, County Defendants shall file

10  an Answer to the remaining claims by **October 17, 2014.**

12    **IT IS SO ORDERED.**

14  DATED:   9/17/2014

                               HON. ROGER T. BENITEZ
                               United States District Judge