# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN NEWS AND INFORMATION SERVICES, INC.; et al., <br><br> Plaintiffs, <br><br> vs. <br><br> WILLIAM D. GORE; et al., <br><br> Defendants. | CASE NO. 12CV2186 BEN (KSC) <br><br> **ORDER GRANTING MOTION TO DISMISS THIRD AMENDED COMPLAINT AS TO DEFENDANTS ALLENSWORTH, BRENEMAN, AND PROCTOR** <br><br> [Docket No. 65] |

Presently before the Court is a Motion to Dismiss Plaintiff James Playford's Third Amended Complaint ("TAC"). (Docket No. 65.) Defendants Jesse Allensworth, James Breneman, and Michael Proctor move to dismiss Plaintiff's third claim for false arrest, the only claim asserted against them. (*Id.*) Defendants assert Playford's arrest was based on probable cause or, in the alternative, each is entitled to qualified immunity. (*Id.*) Playford has filed an Opposition and Defendants have filed a Reply. (Docket Nos. 68-69.) The Court finds Defendants Allensworth, Breneman, and Proctor are entitled to qualified immunity and **GRANTS** the Motion to Dismiss.

## BACKGROUND[1]

The Court will not repeat in detail the background provided in the Court's prior decision, but notes the following facts for purposes of this motion. Playford is

---

[1] The Court is not making any findings of fact, but rather is summarizing the relevant allegations of the TAC.

1  a local freelance photojournalist and videographer. He has been an agent of
2  American News, a Connecticut news and information corporation, since February
3  2010. Playford received media credentials from the San Diego Police Department
4  ("SDPD") in 2007. His credentials were revoked on January 11, 2010.

5  Sometime after January 1, 2009 and before May 25, 2012, the San Diego
6  County Sheriff's Department ("SDCSD") Public Affairs Director Jan Caldwell
7  distributed or directed the distribution of a captioned photograph of Playford,
8  stating: "Per Jan Caldwell J.C. Playford is not a member of the media" to SDCSD
9  deputies and other law enforcement agencies in San Diego County.

10  Playford's third claim in the TAC alleges he was falsely arrested on May 25,
11  2012 for refusing to leave an accident scene to which Playford believed he should
12  have access as a member of the media. Playford entered a multiple fatality, highway
13  motor-vehicle accident scene that was closed to the public, but accessible to some
14  members of the media. Playford was recognized as he approached the scene by
15  Defendant Proctor, a SDCSD Deputy, who was directing traffic. After Playford was
16  directed across the highway, Defendant Breneman, also a SDCSD Deputy,
17  approached Playford and advised him he could not be there because he lacked valid
18  credentials. Defendant Proctor then arrived and he and Defendant Breneman
19  repeatedly advised Playford the America News credentials he presented did not
20  allow him to be within the accident scene. Playford objected to his exclusion from
21  the accident scene and refused to leave. He was then arrested for violation of §
22  148(a)(1), resisting, delaying, or obstructing an officer.[2] Playford was ultimately
23  found not guilty.
24  ///
25  ///

26  ────────────────
27  [2]It is not clear from the TAC what, if any role Defendant Allensworth, also a SDCSD Deputy, had in Playford's actual arrest. The TAC generally alleges all three Defendants arrested Playford. The only specific allegations concerning Allensworth
28  describe his communications with a California Highway Patrol officer about Playford's media credentials.

**DISCUSSION**

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) test the sufficiency of this required showing. *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

**I.   False Arrest Claim**

Defendants assert that Playford's false arrest claim must be dismissed because the arrest was based on probable cause or, in the alternative, that they are entitled to qualified immunity. Playford claims that probable cause was lacking because the Defendants' repeated orders to leave the accident scene were unlawful and the lawfulness of the officer's order is an element of the offense for which he was arrested. Playford argues the order was unlawful because he was permitted to be at the accident scene as a member of a news organization under California Penal Code § 409.5(d). Playford does not specifically discuss qualified immunity, but does assert that it was clearly established prior to his arrest that the lawfulness of an officer's order is an element of § 148(a)(1).

    **A.   Qualified Immunity**

The Court will address qualified immunity first because it is dispositive. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). There are two prongs to the qualified immunity analysis: (1) "[t]aken in the light most favorable to the party asserting the injury, do the facts

alleged show the officer's conduct violated a constitutional right?" and (2) "whether the right was clearly established"? *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle*, 132 S. Ct. at 2093 (internal quotation marks omitted). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Id.* "Moreover, because 'the entitlement is an immunity from suit rather than a mere defense to liability' [the Supreme Court] repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* (summarizing cases) (internal citation omitted). "Immunity ordinarily should be decided by the court long before trial." *Id.* at 228.

In the context of a false arrest claim, "the two prongs of the qualified immunity analysis can be summarized as: (1) whether there was probable cause for the arrest; and (2) whether it is *reasonably arguable* that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011) (citing *Jenkins v. City of New York*, 478 F.3d 76, 87 (2nd Cir. 2007)). "Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

It is at least reasonably arguable that probable cause existed to arrest Playford for violation of § 148(a)(1). The elements of § 148(a)(1) are: "(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties." *Yount v. City of Sacramento*, 43 Cal. 4th 885,

894-95 (2008) (quoting *In re Muhammed C.*, 95 Cal. App. 4th 1325, 1329 (6th Dist. 2002)). Additionally, as Playford emphasizes in his Opposition, "the lawfulness of the officer's conduct is an essential element of the offense under § 148(a)(1)." *Hooper v. Cnty. of San Diego*, 629 F.3d 1127, 1130 (9th Cir. 2011).

Playford describes his approach to the accident scene, its closure to the public, and the activities of law enforcement at the scene. These allegations make clear that he knew the Defendants were peace officers engaged in the performance of their duties, meeting the second and third elements. Playford also met the first element because he alleges he objected and refused to move as repeatedly directed by Defendants. As the Court noted in its prior order, *In re Muhammed C.* addressed a similar issue in affirming a defendant's conviction under § 148(a). 95 Cal. App. 4th 1325. The defendant defied a police officer's order to stop talking to another individual who had been arrested. *Id.* at 1330. The defendant acknowledged the officer's order, but did not follow it. *Id.* Here, Playford affirmatively objected to being excluded from the accident scene and defied Defendants' orders to leave.

It is the final requirement, that the officer's conduct be lawful, that Playford raises here.[3] He asserts that the Defendants' orders to leave the accident scene were unlawful because he was permitted to be there under § 409.5(d). Section 409.5 "authorizes police officers and other designated government officials to cordon off and close a disaster area to the general public where the disaster has created 'a menace to the public health or safety.'" *Leiserson v. City of San Diego*, 184 Cal. App. 3d 41, 49 (4th Dist. 1986) (quoting § 409.5). It also "limits application of the [section] to persons *other than* 'duly authorized representatives' of various news media organizations." *Id.* (emphasis added).

---

[3]The Court acknowledges this requirement flows from the second element, that the officer was engaged in the performance of his duties, but addresses it separately for ease of analysis. *See People v. Gonzalez*, 51 Cal. 3d 1179, 1176 (1990) (explaining that an officer "is not engaged in his duties, for purposes of an offense defined in such terms, if his conduct is unlawful").

Playford argues § 409.5 provides the only basis for closing an accident scene and, because it prohibits exclusion of duly authorized news representatives, Defendants' orders to leave the scene were unlawful. Defendants argue § 409.5 does not apply because this was not a disaster scene that was a menace to the public and it constituted the scene of a possible crime.

Possible crime scenes, even if disaster scenes subject to § 409.5, may be closed to the media. *Leiserson v. City of San Diego,* 184 Cal. App. 3d at 53 (finding belief that jetliner crash site was possibly a crime scene was sufficient to exclude press despite applicability of § 409.5). There is no clearly established authority deciding whether § 409.5 applies to a non-disaster scene. The statutory language suggests § 409.5 applies only to disasters. "Accident" scenes are subject to closure under it, as Playford emphasizes, but "accident" is within a list of "calamit[ies], including "flood, storm, fire, earthquake, explosion, . . . or other *disaster.*" Defendants also accurately note that the only case to substantively analyze § 409.5 describes it as applying to disaster sites. *Leiserson*, 184 Cal. App. 3d at 49 ("Section 409.5 authorizes police officers and other designated government officials to cordon off and close *a disaster area* to the general public where the *disaster* has created a menace to the public health or safety") (emphasis added).[4] The case makes numerous similar references throughout to disaster areas and disaster sites. *Id.* at 44, 46, 49-51. However, the case unquestionably involved a disaster scene, a jetliner crash in a residential neighborhood. 184 Cal. App. 3d at 44. Additionally, Defendants rely on *Los Angeles Free Press, Inc. v. City of Los Angeles.* 9 Cal. App. 3d 448 (2d Dist. 1970). Although the court did not discuss the applicability of § 409.5, the court upheld restrictions allowing some members of the media access to areas closed by police and excluding others under the police

---

[4] The decision also describes § 409.5 as the Legislature's effort to strike a balance between press access and the need for "police an fire personnel to respond quickly and effectively to *major disasters*." *Leiserson*, 184 Cal. App. at 44 (emphasis added).

powers. *Id.* at 455-56.

Whether this accident was a disaster scene subject to § 409.5 or a possible crime scene, the Court need not decide. It is sufficient for purposes of qualified immunity that it was reasonably arguable that the Defendants had probable cause to arrest Playford. *Rosenbaum*, 663 F.3d at 1076. Playford was in a multi-fatality accident scene. Defendants had been previously advised Playford was not a member of the media and he lacked government-issued media credentials. When Playford was repeatedly advised that he was not permitted there, he objected and refused to leave. Under these circumstances, it was not clearly established that the order to leave was unlawful. Defendants could "reasonably but mistakenly conclude that probable cause [was] present." *Hunter*, 502 U.S. at 227; *see also Rosenbaum*, 663 F.3d at 1076 ("An officer who makes an arrest without probable cause . . . may still be entitled to qualified immunity if he reasonably believed there to have been probable cause"). Accordingly, Defendants are entitled to qualified immunity.

## II. Leave to Amend

"Although a district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations, dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Zixiang Li*, 710 F.3d at 999 (citing *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) and quoting (*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008)) (internal citation omitted). A "district court's discretion over amendments is especially broad where the court has already given a plaintiff one or more opportunities to amend his complaint." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir. 1987). Playford has now had an opportunity cure the deficiencies noted in the Court's prior order and it does not appear that the claim can be saved by amendment. Accordingly, the third claim is **DISMISSED** without leave to amend.

## CONCLUSION

Playford's third claim is **DISMISSED** without leave to amend based on qualified immunity. As this is the only claim asserted against Defendants Allensworth, Breneman, and Proctor, these Defendants are dismissed. The case shall proceed as to remaining Defendants and claims.

**IT IS SO ORDERED**.

DATED:  April 10, 2015

_____
Hon. Roger T. Benitez
United States District Judge