EXHIBIT 6

EXHIBIT 6

EXHIBIT 6

EXHIBIT 6

EXHIBIT 6

EXHIBIT 6

EXHIBIT 6

EXHIBIT 6

EXHIBIT 6

EXHIBIT 6

EXHIBIT 6

EXHIBIT 6

EXHIBIT 6

EXHIBIT 6

EXHIBIT 6

EXHIBIT 6

EXHIBIT 6

EXHIBIT 6

EXHIBIT 6

EXHIBIT 6

EXHIBIT 6

EXHIBIT 6

# SAN DIEGO REGIONAL
## DEPUTY'S REPORT
### NARRATIVE

Page 1 of 2

| CONTINUED ☐ARR./JCR ☐MISC. CITE FROM: ☒CRIME | | | | CASE NUMBER 10020663 | |
|---|---|---|---|---|---|
| CODE SECTION AND DESCRIPTION (ONE INCIDENT ONLY) Deputy's Report | MONTH 02 | DAY 28 | YEAR 10 | DAY OF WEEK Sun | TIME 1350 |
| LOCATION OF INCIDENT 200 Magnolia Ave | CITY Ramona | | | BEAT 431 | |
| PERSON(S) INVOLVED: VICTIM | SUSPECT (IF NAMED) James Playford | | | | |

**ORIGIN:**
On 02/28/2010, at about 1216 hours, Deputy Seiver (#7103) and I were dispatched to an assault with a deadly weapon which occurred at 258 Magnolia Ave. in Ramona. One of the parties was at the residence at 258 Magnolia Ave, and the other party, Matthew Deskovick, was standing by at the end of the private road, in the 200 block of Magnolia Ave.

**Deputy's Observations and Actions:**
Mine and Deputy Seiver's patrol vehicles were parked along the west shoulder of the 200 block of Magnolia. At about 1350 hours, Deputy Seiver was obtaining statements from Matthew Deskovick and a witness, Sean Maginnis. We were standing in between our patrol vehicles. A subject in a white Ford F-150, parked his vehicle on the east shoulder of Magnolia, approximately 75 yards south of our location. As the subject exited his vehicle, I immediately recognized the subject from prior law enforcement contacts as, James Playford.

Playford began walking towards our location, with his video camera directed at us. Playford walked up until he was directly across the street from Deputy Seiver and I. Playford yelled out, "This man needs to be arrested for child endangerment! There were children inside the house!" Several times during Deputy Seiver's interview with Deskovick, Deskovick was distracted by Playford's yelling.

Playford then walked north of our location, and stood behind Deputy Seiver's patrol vehicle. Playford continued filming. Playford then walked back across the street and continued south. Playford crossed back across the street and was standing to the rear of my patrol vehicle. Playford continued walking closer. I observed that he was approximately ten feet from me. Deputy Seiver told Playford that we were conducting an investigation and that he was interfering. Deputy Seiver told Playford that he was standing to close. Playford asked where he is supposed to stand. Deputy Seiver told Playford that he needed to stand back behind a telephone pole. Deputy Seiver then pointed at a telephone pole which was approximately sixty feet from us. Playford ignored Deputy Seiver. Playford instead walked across the street. Playford again walked to the back of Deputy Seiver's vehicle, and filmed for a few moments. Playford then walked back across the street, and stopped and filmed for a few moments. Playford then crossed back across the street and was standing next to my patrol vehicle, in the same spot which Deputy Seiver told him was to close just a few minutes earlier. Deputy Seiver again had to interrupt his interview. Deputy Seiver walked towards Playford and told him again that he was too close. Playford began arguing stating that he was within his Constitutional Rights and that this is America. Playford then began yelling for Deputy Seiver not to touch him because he had not committed any crimes. I never observed Deputy Seiver have any physical contact with Playford. Playford then yelled that he wanted badge numbers from both deputies on scene.

Playford then walked back across the street, and continued filming. Deputy Seiver concluded his investigation soon after.

I later contacted, Matthew Deskovick and Sean Maginnis and obtaining the following statements from them regarding what they had witnessed.

**Statements:**
**Statement of Matthew Deskovick (Witness)**
Deskovick stated that he observed the male park his truck on the shoulder of the roadway. The subject got out of the vehicle and was carrying a camera. The subject then walked up and began filming while Deputy Seiver was talking to him. Deskovick stated that it was very distracting. Deskovick stated that the subject kept walking around in a half moon around him and the deputies. He then saw the subject walk up behind the deputies. Deputy Seiver then turned around and told him that he was to close. Deskovick estimated that he was approximately 10 to 15 feet away from deputies. Deputy Seiver told the subject that he needed to go stand behind a power pole. Deskovick stated the pole was approximately 50 feet from his location. The subject appeared to completely ignore Deputy Seiver. Deskovick stated the subject continued walking around filming. He then saw the subject walk up behind deputies again. Deskovick estimated

| REPORTING OFFICER J. Ward | AJUIS # 7139 | DIVISION Ram- Pat | APPROVER 2312 | DATE OF REPORT: | MONTH 03 | DAY 01 | YEAR 2010 | TIME 0930 |
|---|---|---|---|---|---|---|---|---|

AJUIS-JC REV 12/07

## SAN DIEGO REGIONAL
### DEPUTY'S REPORT
#### NARRATIVE

Page 2 of 2

that he was again approximately 10 to 15 feet away from deputies. Deskovick observed Deputy Seiver again tell the subject that he was to close. The subject asked Deputy Seiver where he should stand. Deskovick heard Deputy Seiver again tell him that he needed to be behind the telephone pole. Deskovick did not see Deputy Seiver ever touch the subject.

Deskovick stated that he does not know the subject.

### Statement of Sean Maginnis: (Witness)

Maginnis stated that he observed the subject standing across the street filming. The subject was yelling, "This man should be arrested for child endangerment!" Maginnis stated that the subject was walking around the area filming from different areas. He observed Deputy Seiver tell the subject at one point that he was coming to close. Deputy Seiver told him to go stand behind a telephone pole and not come any closer. Maginnis stated that the subject ignored Deputy Seiver. The subject continued walking around the area filming. The subject then walked close again, Deputy Seiver had to stop what he was doing and go over and tell the subject that he was to close. Maginnis estimated that the subject was 15 feet from him. The subject began yelling that he was within his Constitutional Right's because he was in America. Maginnis never saw Deputy Seiver touch the subject.

Maginnis stated that Playford appeared to be, "looking for trouble." He also stated that Playford was trying to "provoke" deputies. Maginnis stated, "The deputies showed great restraint dealing with him." Maginnis stated that he couldn't believe that someone was allowed to act that way and was not arrested for interfering.

Maginnis stated that he does not know the subject.

### Deputy's Observations and Actions (Continued):
This completed my portion of the investigation.

### RELATED REPORTS:
See Deputy Seiver's Report.

| REPORTING OFFICER | ARJIS # | DIVISION | APPROVER | DATE OF REPORT: | MONTH | DAY | YEAR | TIME |
|---|---|---|---|---|---|---|---|---|
| J. Ward | 7139 | Ram-Pat | 7J1L | | 03 | 01 | 2010 | 0930 |

ARJIS-9C REV 12/07